# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ANDREW GEORGESON, D.O., | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | No. 05 C 1653 |
| | ) | |
| DUPAGE SURGICAL CONSULTANTS, LTD., | ) | Judge Blanche M. Manning |
| an Illinois Corporation, RICHARD A. | ) | |
| JORGENSEN, M.D., and ANTHONY | ) | Magistrate Judge Geraldine S. Brown |
| ALTIMARI, M.D., | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

On March 22, 2005, Plaintiff Andrew Georgeson, D.O. filed a complaint against defendants, DuPage Surgical Consultants, Ltd., ("DSC"), Richard A. Jorgensen, M.D., and Anthony Altimari, M.D. (collectively referred to herein as "defendants"), alleging, *inter alia*, a civil conspiracy. Before the court is defendants' motion to dismiss the civil conspiracy claim pursuant to Fed. R. Civ. P. 12(b)(6). For the following reasons, the court denies defendants' motion.

## I. STANDARD FOR MOTION TO DISMISS

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits. *Gibson c. Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In a ruling pursuant to Fed. R. Civ. P. 12(b)(6), the court assumes the truth of all well-plead factual allegations in the complaint, construing allegations liberally and viewing them in the light most favorable to the non-moving party. *McMath v. City of Gary*, 976 F.2d 1026, 1031 (7th Cir. 1992); *Craigs, Inc. v. General Electric Capital Corp.*, 12 F.3d 686, 688 (7th Cir. 1993). Dismissal is properly granted if it is clear that no set of facts which plaintiff could prove consistent with the pleadings would

entitle plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Kunik v. Racine County, Wis.*, 946 F.2d 1574, 1579 (7th Cir. 1991). The court will not dismiss a complaint unless it is clear that there is no set of facts on which a plaintiff could recover on a claim. *Freiburger v. Emery Air Charter*, 795 F.Supp. 253, 259 (N.D. Ill. 1992).

## II. INTRODUCTION

The following facts are deemed true for purposes of this motion to dismiss.

**A.      Georgeson's Employment with DSC**

Georgeson joined DSC as an independent contractor in September 1996, where he was employed until August 28, 2002. In January 1998, DSC offered Georgeson the opportunity to purchase shares of the corporation. Georgeson accepted DSC's offer and paid $150,000 over the next three years in exchange for his shares. He became a shareholder in DSC on January 1, 1998, and his buy-in was completed in January 2001. He remains a shareholder in DSC. Defendants Jorgensen and Altimari are directors, shareholders, and officers of DSC.

In August 2002, Georgeson terminated his employment at DSC. During his final month of employment, Georgeson did not receive any financial statements from DSC, despite his requests. Moreover, since August 2002, DSC has never provided Georgeson with notices of shareholder meetings.

After leaving DSC, Georgeson sought to sell back his shares of stock. In the fall of 2002, Dr. Montana, a then-shareholder in DSC, informed Georgeson of the shareholders' decision not to buy Georgeson's shares. Since then, neither Jorgensen, Altimari, nor any other shareholder or agent of DSC has responded to Georgeson's inquiries regarding compensation for his shares of stock.

Georgeson has sent DSC numerous requests under the Illinois Business Corporation Act, including a request for corporate information in January 2003, a request for an accounting in February 2003, and a formal demand to examine books and request for a 2003 balance sheet on

November 11, 2004. Additionally, Georgeson's appointed attorney sent DSC a second formal demand to examine books and records and a request for a 2003 balance sheet on December 20, 2004, and a request on January 3, 2004 to provide a 2004 balance sheet. DSC first responded on January 10, 2005 by offering to allow Georgeson to physically examine DSC's books and records. Although the records show that Georgeson was a shareholder from 1998 through 2002, there are no shareholder agreements, minutes, resolutions or any other documents or records evidencing either that Georgeson is no longer a shareholder or the existence of an oral agreement to terminate Georgeson's status as a shareholder.

**B.    The Claim of Civil Conspiracy**

As stated in the complaint, the defendants and other unnamed conspirators allegedly agreed to oppress Georgeson, deprive him of his rights as a shareholder, breach statutory and common law duties owed to him, and violate his civil rights.

**C.    The Alleged Acts of Oppression**

Specifically, Jorgensen, Altimari and the other shareholders allegedly: (1) refused to give Georgeson any information regarding his ownership interest or the buy-out of his stock, (2) withheld financial statements and other corporation information from Georgeson during his last month as a surgeon employed by DSC, (3) failed to respond in a timely fashion to Georgeson's demand to examine books and records of DSC, (4) failed to mail a balance sheet within 14 days of the close of the 2003 fiscal year, (5) failed to respond to Morrison's demand to examine the books and records of DSC on behalf of Georgeson, (6) failed to mail a second time a balance sheet within 14 days of the close of the 2003 fiscal year, (7) failed to assist Georgeson in obtaining tail insurance coverage, (8) used the resources and assets of DSC for the personal benefit and side business of those in control, including the consulting/expert testimony business of Jorgensen, and perhaps others, without compensating DSC or the other shareholders such as Georgeson, (9) falsely asserted that Georgeson ceased being a shareholder of DSC, and (10)

instructed DSC agents to assert falsely that Georgeson ceased being a shareholder pursuant to some form of oral agreement.

### III. ANALYSIS

Defendants move to dismiss Georgeson's conspiracy claim (count IV) on the ground that a civil conspiracy between them is a legal impossibility.

**A.      The Intracorporate Conspiracy Doctrine**

Under Illinois law, civil conspiracy consists of "a combination of two or more persons for the purpose of accomplishing, by some collaborating action, either an unlawful purpose or a lawful purpose by unlawful means." *Adcock v. Brakegate Ltd.*, 164 Ill.2d 54, 62-63 (1994). The general rule[1] ("intracorporate conspiracy doctrine") is there can be no civil conspiracy between a corporation's own officers or employees, (*Van Winkle v. Owens-Corning Fiberglass Corp.*, 683 N.E.2d 985, 991 (Ill. App. Ct. 1997), nor between a corporation and its agents. *Small v. Sussman*, 713 N.E.2d 1216, 1222 (Ill. App. Ct. 1999); *Bilut v. Northwestern Univ.*, 692 N.E.2d 1327, 1332 (Ill. App. Ct. 1998). Because agents and officers are representatives of the corporation, a conspiracy between officers, or between agents and the corporation, is a legal impossibility. *Small*, 713 N.E.2d at 1222 ("A corporation is incapable of conspiring with itself.").

As alleged in the complaint, Jorgensen and Altimari are both officers, and therefore agents, of DSC. Thus, on its face, the intracorporate conspiracy doctrine prevents a claim of civil conspiracy between Jorgensen and Altimari, or between either doctor and DSC.

Nevertheless, courts have recognized two exceptions to the Illinois intracorporate conspiracy doctrine. The first exception occurs when a separately incorporated conspirator acts out of self-interest rather than in the interest of the principal corporation. *Bilut,* 692 N.E.2d at

---

[1] Although the term intracorporate conspiracy doctrine is found primarily in federal jurisprudence, it will be used to refer to the Illinois rule for the purpose of clarity. *See e.g., Fairley v. Andrews*, 300 F. Supp. 2d 660, 668 (N.D. Ill. 2004).

1332-33 ("where the interests of a separately incorporated agent diverge from the interests of the corporate principal and the agent . . . is acting . . . for his own benefit . . . .") (*citing Pink Supply Corp. v. Hiebert, Inc.*, 788 F.2d 1313, 1317 (8th Cir. 1986)). *See also Salaymeh v. Interqual, Inc.*, 508 N.E.2d 1155, 1158 (Ill. App. Ct. 1987) (holding in part that there was no conspiracy on the grounds that the complaint was devoid of allegations that the agents acted in their own interest). Another exception exists when the conspirators act beyond the scope of their official duties. *Equal Employment Opportunity Commission v. Outsourcing Solutions Inc.*, No. 01 C 7037, 2002 WL 31409584, at *17 (N.D. Ill. Oct. 24, 2002) ("Application of the doctrine does not depend on whether the conspirators' actions were wrongful, but on whether the wrongful conduct was performed within the scope of the conspirators' official duties.") *(citing Tabor v. City of Chicago*, 10 F. Supp. 2d 988, 994 (N.D. Ill. 1998)). *See also Whitney v. Renaissance Software Corp.*, 98 F.Supp.2d 981 (N.D. Ill. 2000) ("[a]s officers of the same company, *acting within their scope of employment*, Saltzman and Jackson could not commit a civil conspiracy.").[2] Accordingly, the court examines whether Georgeson's allegations state a claim for conspiracy under these exceptions.

Georgeson alleges that the defendants "us[ed] the resources and assets of DuPage Surgical Consultants for the personal benefit and side businesses of those in control, including the consulting/expert testimony business of Dr. Jorgensen." Construing the pleadings liberally in favor of the non-moving party, the court concludes that the complaint states a claim for civil conspiracy given the exception to the intracorporate conspiracy doctrine when an alleged

---

[2] Plaintiff's citations to cases based on federal statutes in support of exceptions to the intracorporate conspiracy doctrine are inapposite in the instant diversity case. *Fairley v. Andrews*, 300 F. Supp. 2d 981, 983 (N.D. Ill. 2000) ("[A] section 1983 conspiracy claim . . ."); *Mehl v. Navistar Int'l Corp.*, 670 F. Supp. 239, 241 (N.D. Ill. 1987) ("Count III alleges the Lennox and Springer conspired to deprive Mehl of his retirement benefits and in the course of doing so, violated ERISA laws."); *St. Joseph's Hospital, Inc. v. Hospital Corp. of America*, 795 F.2d 948 (11th Cir. 1986) ("This appeal arose out of an action . . . for alleged violations of the Sherman Antitrust Act, 15 U.S.C. § 1 and 2.").

conspirator acts out of his own self-interest. *See Bilut,* 692 N.E.2d at 1332-33.

Moreover, Georgeson alleges, *inter alia*, the following acts and omissions by the defendants: (1) improperly asserting, and instructing DSC's agents to assert, that Georgeson ceased being a DSC shareholder, (2) myriad failures to provide notice of shareholder's events and to comply with requests to inspect corporate records, and (3) improper allocation of corporate finances. The court finds that the complaint states a claim for conspiracy given the exception when a party acts outside the scope of their official duties. *See Outsourcing Solutions Inc.*, No. 01 C 7037, 2002 WL 31409584, at *17. Although the defendants assert that the alleged actions could have been performed within the scope of their official duties, a liberal construction of the pleadings in favor of Georgeson indicate to the contrary.

Alternatively, defendants argue that, even if the allegations are true, it is impossible to act outside the scope of their official duties when they act as directors of the corporation. Specifically, defendants point to the complaint which states, "[*A*]*s the directors or those in control* of the corporation DuPage Surgical Consultants, Jorgensen, Altimari acted in a manner oppressive to Georgeson. . . ." (emphasis added). However, these allegations could also be construed to mean "in their position as directors" or "because of their position as directors or those in control." At this juncture, the court will not construe the allegations as a legal conclusion that the defendants were acting within their official capacities.

For the reasons stated above, the court finds that the allegations, read in a light most favorable to the non-moving party, are consistent with a set of facts under which Georgeson could recover. Thus, the court denies the defendants' motion to dismiss on this ground.

**B. Sufficiency of Complaint**

In the alternative, defendants claim that "[t]he [c]omplaint is devoid of any facts to show how [d]efendants worked together to carry out the alleged common scheme of oppressing [Georgeson's] rights and of violating Illinois law and their alleged breach of fiduciary duty."

6

The court notes that a complaint must provide defendants with a "short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). Here, Georgeson has alleged fourteen actions[3] supporting a civil conspiracy. Given the minimal burden to allege a short and plain statement, and in light of the fourteen specific actions, the court finds that Georgeson has met his obligation under Fed. R. Civ. P. 8(a)(2). Defendants' motion to dismiss for lack of specificity is, therefore, denied.

## IV. CONCLUSION

When taken as true and viewed in a light most favorable to the non-moving party, the complaint supports a set of facts that would entitle Georgeson to relief on a claim of civil conspiracy. Accordingly, for the reasons stated above, the court denies defendants' motion to dismiss [12-1].

**ENTER:**　　　　　　　　　　　　　　　*Blanche M. Manning*

　　　　　　　　　　　　　　　　　　　　**Blanche M. Manning**
　　　　　　　　　　　　　　　　　　　　**United States District Judge**

**DATE:** July 26, 2005

---

[3]　　See "The Acts of Oppression", *supra.*