# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| ANDREW GEORGESON, D.O., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 05 CV 1653 |
| v. ) | Judge Blanche M. Manning |
| ) | |
| DuPAGE SURGICAL CONSULTANTS, LTD., ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Plaintiff Andrew Georgeson joined an existing medical practice in Wheaton, Illinois, by buying shares of the practice for $150,000. When he left the practice a few years later, he received nothing for his shares. Georgeson contends the remaining shareholders improperly terminated his shareholder rights. He thus sued them and the practice for oppression (Count I), breach of fiduciary duty (Count III), civil conspiracy (Count IV), and for failing to let him examine the corporate records (Count II). The defendants have moved for summary judgment on Counts I, III and IV, arguing that they were not obligated to repurchase Georgeson's shares when he left, and their decision not to repurchase his shares is protected by the business judgment rule. For the reasons that follow, the court denies the defendants' motion for partial summary judgment.

## BACKGROUND

The following background is based upon uncontested facts, except where noted. Andrew Georgeson began performing surgeries at DuPage Surgical Center in 1996. Two years later, the existing shareholders of DuPage Surgical—defendants Richard Jorgensen and Anthony Altimari,

along with Louis Montana, who is not a party to this suit—invited Georgeson to become a shareholder. Georgeson accepted and paid a total of $150,000 for his shares, which he paid over time through payroll deductions. At the time Georgeson accepted the invitation to become a shareholder, defendant Altimari told him that the $150,000 payment was for the purchase of an ownership interest in DuPage Surgical. Although Georgeson had completed paying for his shares in 2000, he never received share certificates.

During Georgeson's tenure at DuPage Surgical, one shareholder left the group practice and, upon his departure, received back the full amount he had paid for his shares. Another shareholder who had not fully paid for his shares before he left was nevertheless refunded the "nominal contribution" that he had paid toward his purchase of shares.

In 2001, Georgeson asked one of DuPage Surgical's accountants, Ronald Austin, to prepare a valuation of his shares that he needed to complete a loan application. In response, Austin sent him a letter acknowledging his ownership of "1/7th of the total issued and outstanding shares in the company." which Austin valued at $255,000.

In the summer of 2002, Georgeson announced to the other shareholders that he was leaving DuPage Surgical. According to Georgeson, he expected the defendants to buy back his shares same as they had done upon other shareholders' departures. However, unlike the previous shareholders who had left, Georgeson received nothing for his shares upon his departure. Months later, the remaining shareholders of DuPage Surgical met and decided that they would pay Georgeson nothing for his shares. Defendant Jorgensen admits that one reason the remaining shareholders have paid Georgeson nothing for his shares is because the corporation failed to issue Georgeson his stock certificates in exchange for his $150,000 capital contribution.

The defendants have refused to make other payments normally due shareholders, including equal shares of profits generated by non-shareholder employees, as well as the capital contributions of new shareholders. Twice Georgeson contacted the defendants to finalize a buyout of his shares of stock, but he received no response. DuPage Surgical no longer lists Georgeson as a shareholder in its annual tax returns.

## ANALYSIS

### 1. Summary Judgment Standard

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Valenti v. Qualex, Inc.*, 970 F.2d 363, 365 (7th Cir. 1992), *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Moreover, a court may grant a motion for summary judgment only when the record shows that a reasonable jury could not find for the nonmoving party. *Valenti*, 970 F.2d at 365; *Anderson*, 477 U.S. at 248.

Accordingly, the nonmoving party may withstand summary judgment only by showing that a dispute over a "genuine" material fact exists; that is, the evidence is such that a reasonable jury could render a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248. The nonmoving party may not merely rest upon the allegations or details in his pleading, but instead, must set forth specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

Before turning to the plaintiffs' claims, the court first addresses two threshold matters. First, the defendants have raised dozens of objections to the plaintiff's responses to their Rule 56.1 statements of fact, as well as the plaintiff's statement of additional facts. The most prevalent objections are to relevance, vagueness, facts unsupported by the record, and facts supported only by self-serving statements in the plaintiff's affidavit. The court will not address each of objections individually. Suffice it to say that the court has carefully reviewed each parties' statements of fact, the corresponding objections, and the record. Only those facts supported by the record have been taken into account. However, the court notes generally that otherwise admissible evidence may be used to defeat summary judgment even though it appears in a "self-serving" affidavit. *See Paz v. Wauconda Healthcare & Rehabilitation Centre, LLC*, 464 F.3d 659, 664-65 (7th Cir. 2006) (evidence presented in a "self-serving" affidavit is enough to defeat a motion for summary judgment as long as the evidence meets the usual requirements for evidence at the summary judgment stage); *Keefe v. Mega Enterprises, Inc.*, No. 02 CV 5156, 2005 WL 693795, at *1 (N.D. Ill Mar. 23, 2005) (objecting to statements of facts on relevance grounds is inappropriate).

Second, the parties do not address what state's law the court should apply to each of Georgeson's claims. However, it appears uncontested that DuPage Surgical was incorporated in and its principal place of business is in Illinois, and that all events giving rise to Georgeson's claims occurred in Illinois. Accordingly, the court will apply Illinois law. *Foodcomm Int'l v. Barry*, 463 F. Supp. 2d 818, 830 (N.D. Ill. 2006) (under Illinois' internal affairs doctrine, internal corporate matters are governed by the law of the state of incorporation, while civil conspiracy is governed by the law of the state where the conspiracy occurred); *Prime Leasing, Inc. v. Kendig*,

773 N.E.2d 84, 96 (Ill. App. Ct. 2002) (under Illinois' choice-of-law rules, breach of fiduciary duty claims are governed by the law of the state of incorporation).

2. **Shareholder Oppression (Count I)**

In Count I, Georgeson alleges shareholder oppresion by majority shareholders Jorgensen and Altimari based upon their initial failure to issue him share certificates, as well as their subsequent efforts to thwart his ability to recover the value of his shares and other monies he alleges he is due. The Illinois Business Corporation Act prohibits "directors or those in control" from acting in a way that is "illegal, oppressive, or fraudulent with respect to" the other shareholders. *See* 805 Ill. Comp. Stat. 5/12.56(a)(3). Although the Act does not define what types of conduct are "oppressive," the few cases that address the issue under Illinois law have found that conduct is oppressive if it is "arbitrary, overbearing and heavy-handed." *See, e.g., Compton v. Paul K. Harding Realty Co.*, 285 N.E.2d 574, 499 (Ill. App. Ct. 1972). Thus, in *Compton*, the court held that the defendant had oppressed a minority shareholder by "failing to call meetings of the board of directors or to consult with plaintiff Compton regarding management of corporate affairs." In other words, the defendant oppressed the minority shareholder by shutting him out of the corporation's affairs. *Id. See also Gidwitz v. Lanzit Corrugated Box Co.*, 170 N.E.2d 131, 138 (Ill. 1960) (shareholder of closely-held corporation used his position as president to oppress the other shareholders by denying them their "rights and privileges," including the right to participate in the management of the corporation); *Notzke v. Art Gallery, Inc.*, 405 N.E.2d 839, 843 (Ill. App. Ct. 1980) (conduct that "allegedly affect[ed] an individual shareholder's control over corporate matters" was oppressive).

Georgeson has presented evidence that the defendants shut him out of the corporate affairs of DuPage Surgical. According to Georgeson, upon his departure the defendants eliminated his shares (as reflected on corporate income tax returns which no longer listed Georgeson as a shareholder), and refused to compensate him for those shares even though they had compensated the other shareholders who had left. Georgeson's evidence, if true, shows that the defendants completely denied him the incidents of ownership of his shares in DuPage Surgical, and therefore the evidence is sufficient to withstand summary judgment on Georgeson's claim of oppression.

Nevertheless, the defendants set forth several alternative arguments they contend entitle them to summary judgment. First, they argue that their alleged conduct injured the corporation, not Georgeson personally. For instance, they argue that their alleged failure to maintain corporate records directly harmed only the corporation; shareholders would be harmed only indirectly. Therefore, they conclude, Georgeson lacks standing to assert claims based upon such conduct. *See Small v. Sussman*, 713 N.E.2d 1216, 1222 (Ill. App. Ct. 1999) (shareholder lacks standing to sue in his own right when the alleged injury was inflicted on the corporation; such claims must be brought derivatively on the corporation's behalf).

The court notes first that Georgeson has either (1) agreed not to rely upon most of the conduct which the defendants argue harmed only the corporation (for instance, the defendants' alleged use of DuPage Surgical resources for their own benefit, their acceptance of excessive salaries, and their mismanagement of the corporation) or, (2) has failed to submit the evidence the defendants anticipated that he would (for instance, the defendants' alleged failure to cause the corporation to pay dividends, or to cause the corporation to arrange for "tail" malpractice

coverage for Georgeson after he left DuPage Surgical). Therefore, the defendants' argument that Georgeson may not base his claims upon this conduct is misplaced.

As for Georgeson's evidence that the defendants failed to properly maintain corporate records, Georgeson has sufficiently established that the defendants' conduct was directed at him personally. According to Georgeson's evidence, the defendants failed to properly maintain corporate records by failing to issue share certificates to Georgeson even though the corporate by-laws required the corporation to do so. This alleged failure resulted, at least in part, in the defendants' decision not to compensate Georgeson for his shares upon his departure. Therefore, the defendants' alleged failure to properly maintain corporate records injured Georgeson personally, not the corporation. Moreover, Georgeson has offered evidence of other allegedly oppressive conduct directed at him individually. For instance, according to Georgeson, the defendants stripped him of all incidents of ownership by failing to either (1) buy back his shares or, (2) pay him the share of profits and other shareholders' buy-ins that other shareholders receive.

The court now turns to the defendant's next argument as to why they are entitled to summary judgment on Georgeson's claim of oppression. According to the defendants, Georgeson no longer has standing to assert a claim of oppression because he no longer has an Illinois medical license, and therefore cannot be a shareholder of an Illinois medical corporation. Georgeson's Illinois medical license lapsed on July 31, 2005, when he did not renew it (Georgeson had moved to Michigan and apparently is licensed there). According to the defendants, DuPage Surgical is registered with the state of Illinois as a medical corporation, and therefore its owners must consist entirely of licensed physicians. *See* Illinois Medical

Corporation Act, 805 Ill. Comp. Stat. 15/13 ("No person who is not so licensed shall have any part in the ownership, management, or control of such corporation . . . .")  Without an Illinois medical license, Georgeson's ownership of shares of DuPage Surgical would run afoul of the Illinois Medical Corporation Act.

However, the defendants merely assume, without citation, that the consequence of Georgeson's lack of an Illinois license is that he has lost his ownership interest.  Georgeson does not respond to the defendants' argument, asserting instead that DuPage Surgical is not registered as a medical corporation (despite evidence to the contrary), and therefore the status of his Illinois license is irrelevant.

The defendants' failure to develop its argument, or to cite any support for it, dooms its request for summary judgment on this issue.  *Andy's Restaurant & Lounge, Inc. v. City of Gary*, 466 F.3d 550, 553 n.1 (7th Cir. 2006) (perfunctory and undeveloped arguments that are unsupported by pertinent citations are forfeited).  Furthermore, other provisions within the Medical Corporation Act raise serious questions about the defendants' assumption that the consequence of losing one's license is to lose one's ownership interest in a registered medical corporation.  For instance, the Act provides that a corporation or its shareholders "may purchase the shares of . . . a shareholder no longer qualified to own shares in the corporation" based upon the book value of the shares, unless a different method of valuing the shares is set forth in the articles of incorporation of the by-laws.  *See* 810 Ill. Comp. Stat. 15/16.  The Act therefore contemplates that ineligible shareholders will be compensated for their shares, even in the absence of relevant provisions within the corporation's bylaws.  Another provision of the Act provides that the consequence for failing to remove or discharge an ineligible shareholder is the

suspension or revocation of the medical corporation's registration. *See* 810 Ill. Comp. Stat. 15/10 ("The Department may suspend or revoke any certificate of registration for any of the following reasons: (a) the revocation or suspension of the license to practice medicine of any officer, director, shareholder or employee not promptly removed or discharged by the corporation.")

None of the Act's provisions calls for a shareholder to forfeit the value of his ownership interest upon becoming nonlicensed; to the contrary, section 16 contemplates that the corporation will compensate the former shareholder for the loss of his shares. Therefore, at this juncture, the court cannot conclude that the loss of Georgeson's Illinois medical license adversely affected his ownership interest in DuPage Surgical, or his right to be compensated for that interest.

Next, the defendants argue that, as a matter of law, their conduct was not oppressive because it was protected by the business judgment rule. Under Illinois law, the business judgment rule "is a presumption that officers and directors of a corporation make decisions on an informed basis, and with the best interests of the corporation at heart." *Willmschen v. Trinity Lakes Improvement Ass'n*, 840 N.E.2d 1275, 1279 (Ill. App. Ct. 2005). However, the presumption that normally shields defendants for their business decisions does not apply if the plaintiff presents evidence of fraud, bad faith, or self-dealing. *See Shlensky v. Wrigley*, 237 N.E. 776, 779-80 (Ill. App. Ct. 1968); *see also Sharper v. Bryan*, --- N.E.2d ---, No. 1-05-3849, 2007 WL 703547, at *4 (Ill. App. Ct. Mar. 8, 2007) ("This presumption applies when there is no evidence of fraud, bad faith, or self-dealing in the usual sense of personal profit or betterment on the part of the directors.") (applying Delaware law).

Georgeson has presented evidence that undermines the defendants' attempt to avail themselves of the business judgment rule. Specifically, Georgeson's evidence, if true, would establish that the defendants acted in their own self-interest when they refused to compensate Georgeson for his shares and denied him the other compensation to which he contends he is entitled. The defendants would have benefitted personally because stripping Georgeson of the value of his shares would have raised the value of their own. Accordingly, because Georgeson has evidence that the defendants acted in their own, rather than the corporation's interests, their conduct is not protected under the business judgment rule. *See Sharper*, 2007 WL 703547, at *4 (business judgement rule does not protect self-dealing).

Finally, the defendants contend that they are entitled to summary judgment on count I based upon their affirmative defense of "unclean hands." According to the defendants, the plaintiff has "unclean hands" because he waited until three years after he left DuPage Surgical to sue for the value of his shares. What the defendants are actually attempting to assert (as pointed out in the sole case they cite) is the affirmative defense of estoppel or, more specifically, laches. *See Brenner v. Berkowitz*, 634 A.2d 1019, 1029 (N.J. 1993) ("courts have applied the equitable concept of estoppel to bar relief when a shareholder or director had or should have had knowledge of alleged misconduct but failed to act"). Under the equitable doctrine of laches, a plaintiff who has delayed filing suit loses his right to sue if the delay was both (1) inexcusable and, (2) harmed the defendant. *See Teamsters & Employers Welfare Trust of Ill. v. Gorman Bros. Ready Mix*, 283 F.3d 877, 880 (7th Cir. 2002).

The defendants have not even attempted to explain how they were harmed by Georgeson's decision when to sue. For that reason alone, their attempt to assert the affirmative defense fails.

In summary, Georgeson has submitted evidence of oppressive conduct by the controlling shareholders of DuPage Surgical, defendants Jorgensen and Altimari. None of the defendants' arguments that Georgeson is precluded from prevailing on his claim of oppression is availing, and therefore their motion for summary judgment on count I is denied.

### 3. Breach of Fiduciary Duty (Count III)

Shareholders in a close corporation owe a fiduciary duty to deal fairly, honestly, and openly with each other. *See Rexford Rand Corp. v.* Ancel, 58 F.3d 1215, 1218 (7th Cir. 1995); *Hagshenas v. Gaylord*, 557 N.E.2d 316, 321-22 (Ill. App. Ct. 1990). The defendants do not dispute that they owed Georgeson such a duty. Instead, they argue that Georgeson has no evidence that DuPage Surgical performed poorly financially or that the defendants mismanaged it, and therefore cannot show that they breached their duty. To the contrary, the defendants point out that while being deposed, Georgeson agreed that "DuPage Surgical was a successful financial venture for the doctors involved."

The crux of Georgeson's breach of fiduciary duty claim is not that the defendants mismanaged DuPage Surgical to its financial detriment. Rather, as discussed above, Georgeson has evidence that the defendants shut him out of DuPage Surgical, to their own benefit, by taking away his ownership rights and refusing to compensate him for his shares. Evidence of such alleged self-dealing and oppressive conduct supports Georgeson's claim that the defendants breached their fiduciary duties to him, and defeats the defendants request for summary judgment

on the claim. *See Rexford Rand*, 58 F.3d at 1218 (oppressive conduct by controlling shareholder is evidence that the controlling shareholder breached its fiduciary duty to the minority shareholder).

Accordingly, the defendants' request for summary judgment on count III is denied.

**4.     Civil Conspiracy (Count IV)**

Under Illinois law, the elements of civil conspiracy are (1) an agreement between two or more people, (2) to accomplish an unlawful act or a lawful acts through unlawful means, and (3) at least one of the conspirators committed an overt or unlawful act in furtherance of the conspiracy. *See Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894 (Ill. 1994). But officers and employees of a corporation cannot be considered to be conspirators under the intracorporate conspiracy doctrine as long as they were acting within the scope of their authority. *See Payton v. Rush-/Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 632 (7th Cir. 1999). However, the doctrine is inapplicable if the employees or officers acted outside the scope of their authority, or acted in their own self-interest. *See United States v. All Meat & Poultry Prods. Stored at LaGrou Cold Storage*, --- F. Supp. 2d ---, No. 02 CV 5145, 2007 WL 30542, at *8 (N.D. Ill. Jan. 3, 2007).

The defendants contend that they are entitled to summary judgment on Georgeson's civil conspiracy claim based upon the intracorporate conspiracy doctrine arguing that, as a matter of law, they cannot have conspired with themselves. But as noted above, the doctrine does not shield from liability officers who acted in their own self-interest. *Id.* As discussed above, Georgeson has submitted evidence that the defendants acted in their own self-interest by depriving him of his shares of DuPage Surgical and refusing to compensate him for those shares.

Accordingly, the defendants are not protected by the intracorporate conspiracy doctrine and therefore are not entitled to summary judgment on that basis.

## CONCLUSION

For the foregoing reasons, the defendants' motion for partial summary judgment [107-1] on Count I (shareholder oppression), Count III (breach of fiduciary duty) and Count IV (civil conspiracy) is denied.

ENTER:

DATE: March 22, 2007

*/s/ Blanche M. Manning*
Blanche M. Manning
United States District Judge