JKB/cic/418183                                                                                                                     4801-2

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| ANDREW GEORGESON, D.O., | ) |
|                 Plaintiff, | ) |
| | ) No. 05 C 1653 |
| v. | ) |
| | ) Honorable Judge Samuel P. King |
| DUPAGE SURGICAL CONSULTANTS, LTD., et al., | ) |
|                 Defendants. | ) |

## DEFENDANTS' MOTION FOR JUDGMENT AS A
## MATTER OF LAW AFTER THE CLOSE OF ALL EVIDENCE

Defendants DuPage Surgical Consultants, Ltd., Richard A. Jorgensen, M.D., and Anthony Altimari, M.D. (collectively "Defendants"), pursuant to Federal Rule of Civil Procedure 50(a), hereby submit their Motion for Judgment as a Matter of Law After The Close of All Evidence.

**I. INTRODUCTION**

Plaintiff Andrew Georgeson ("Plaintiff") is a physician formerly employed by Defendant DuPage Surgical Consultants, Ltd. ("DSC"). He voluntarily left the practice in 2002 without a written agreement entitling him to any monies from DSC when he departed. Almost three years after he resigned from the corporation, Plaintiff brought the instant lawsuit against the corporation and two of the corporation's physician-shareholders, Defendants Richard A. Jorgensen, M.D.("Dr. Jorgensen") and Anthony Altimari, M.D. (Dr. Altimari").

Plaintiff has used this lawsuit as an attempt to obtain money from Defendants that he is not entitled to. He alleges the Defendants owe him money for a purported shareholder interest he believes he owns in DSC and has pursued several causes of action against Defendants based on this premise. It is undisputed, however, that Plaintiff's claims are founded on a mere

"assumption" that he would be entitled to some value for his purported interest when he departed corporation. Plaintiff has failed to provide sufficient evidence upon which a reasonable jury would conclude that Defendants are required to pay Plaintiff for what he believes is his ownership interest in the medical corporation he voluntarily departed from and legally can no longer have.

The trial for this case began on October 9, 2007. On October 11th, Plaintiff completed his case in chief, and Defendants moved for judgment as a matter of law and contemporaneously filed the motion in writing that day. Pending the Court's ruling on Defendants' motion, Defendants presented and completed their case in chief. Defendants now move for judgment as a matter of law after the close of all evidence, pursuant to Rule 50(a), as there is no legally sufficient evidentiary basis for a reasonable jury to find for Plaintiff on any and all of the claims he raises in his Complaint. The evidence that has been presented at trial is so one-sided in favor of Defendants that they will prevail. As such, the instant motion should be granted and judgment should be entered as a matter of law on behalf of Defendants.

## II. FACTS

DSC is an Illinois medical corporation located in DuPage County, Illinois, and its doctors provided general surgical services through Chicago's western suburbs. As Plaintiff testified, DSC is considered to be a highly-respected and successful medical practice.

Plaintiff practiced medicine at DSC without any written agreement. Plaintiff began working at DSC in the Fall of 1996, initially as an independent contractor. He was recruited that year into the practice by one of DSC's physicians, Dr. Louis Montana, with the potential to later to join the practice as a shareholder. The following year, Plaintiff agreed to work under a salary adjustment to become a shareholder of the group, wherein money was deducted from his compensation on a quarterly basis. Plaintiff became a shareholder of DSC in January, 1998,

when the 3-year salary adjustment process began. The adjustments were credited to the existing physician-owners who helped Plaintiff begin his practice at DSC, including Dr. Montana and Defendants Drs. Altimari and Jorgensen. Becoming a shareholder of DSC allowed him the opportunity to earn more money than even the most senior surgeons in the group. As Plaintiff testified, by going through the salary adjustment, he was offered an opportunity to make significantly more money than what he was making under the independent contractor arrangement.

Plaintiff testified that no one told him that he would receive any monies from his departure from DSC. Rather, the other doctors in the group advised him that he would only receive his accounts receivable upon departure. Plaintiff admitted he received payment from DSC for his accounts receivable after his departure. Plaintiff also admitted he never voiced a position during the meetings that he believed the doctors, including he, would receive any compensation for shares upon their departure or any other benefit beyond accounts receivables.

Plaintiff testified that he only "assumed" that he would receive the return of his salary adjustment, his alleged "capital contribution," upon his departure or any type of value for his alleged shareholder interest. His assumption was based on his alleged belief that two other physicians that departed, Drs. Thomas Tomasik and Preston Black, had purportedly received their alleged capital contributions back. However, no one told Plaintiff that he would receive such amounts when he departed, he did have a written agreement stating so and there he never made a "capital contribution" to the corporation. In addition, Drs. Tomasik and Black left the corporation under different circumstances as he and Plaintiff did not deny this. In the case of Dr. Tomasik, Plaintiff testified that he never saw the terms of the agreement until after this litigation incepted. The events surrounding Dr. Black's departure also did not occur until after Plaintiff

3

made the decision to become a shareholder of DSC and Plaintiff did not have any evidence to substantiate that Dr. Black signed a separation agreement and received monies as a result of that. Furthermore, Plaintiff did not present any evidence to show that anyone else at DuPage Surgical had the same understanding that Plaintiff now claims he has about receiving payment for his shareholder interest.

Plaintiff, on his own accord, left DSC in 2002 without any written notice. Plaintiff testified that he made the decision to leave the practice in February 2002. However, it was not until May 2002 when one of the one of the doctors, Dr. Montana, confronted him about learning that Plaintiff's place his home for sale that Plaintiff advised anyone at the corporation of his plan to resign.

Subsequent to his departure from DSC in August 2002, Plaintiff left the state of Illinois and moved to Michigan. Plaintiff no longer returned to Illinois to practice medicine at DSC or attend any of the group's periodic shareholder meetings. Plaintiff testified that he received a check from DSC for his accounts receivables in October, 2002. Subsequent to Plaintiff's departure from the corporation, Plaintiff's Illinois medical license expired in July 2005.

On March 22, 2005, almost three years after he left DSC in 2002, Plaintiff filed this lawsuit. Plaintiff's complaint alleges claims for: 1) statutory oppression under 805 ILCS 5/12.56 against Drs. Jorgensen and Altimari; 2) a claim for failure to allow a shareholder to inspect a corporation's books and records under 805 ILCS 5/7.75(b) against all of the Defendants; 3) common law breach of fiduciary duty Drs. Jorgensen and Altimari; and 4) civil conspiracy against all of the Defendants.

III. **LEGAL STANDARD**

Under Rule 50(a), a court should render judgment as a matter of law when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable

4

jury to find for that party on that issue." Fed. R. Civ. P. 50(a); *see also Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2109 (2000). Judgment should be entered under Rule 50(a) where the evidence "is so one-sided that one party must prevail as a matter of law." *Klunk v. County of St. Joseph*, 170 F.3d 772, 775 (7th Cir. 1999).

The Court must consider whether there is substantial evidence in favor of the non-movant. *Mutual Service Cas. Ins. Co. v. Elizabeth State Bank*, 265 F.3d 601, 612 (7th Cir. 2001). A "mere scintilla" of evidence is not enough to prevent judgment as a matter of law. *Garrett v. Barnes*, 961 F.2d 629, 632 (7th Cir. 1992); *James v. Milwaukee County et al.*, 956 F.2d 696, 698 (7th Cir. 1992). In addition, a motion for judgment as a matter of law is properly granted against a party who relies only on speculation and conjecture. *Barnes*, 961 F.2d at 632 (*quoting McClure v. Cywinski*, 686 F.2d 541, 544 (7th Cir. 1982)).

## IV. ARGUMENT

### A. The Plaintiff Has Not Produced Sufficient Evidence To Show That He Is A Shareholder Of DSC

#### 1. Plaintiff Ceased To Be A Shareholder of DSC After He Left The Corporation

After Plaintiff voluntarily departed DSC in August 2002, he ceased to be a shareholder of the corporation. It is undisputed that Plaintiff did not have an executed agreement with the corporation that would establish that he would remain a shareholder upon his departure or that he would receive any compensation for his alleged shares. Plaintiff has presented insufficient evidence to show that the parties understood he would remain a shareholder upon his departure. He has also failed to present any evidence to show that anyone ever told him that he would receive the amounts adjusted from his salary back, i.e., what he alleges he "paid for" to become one, nor that he was told that the $150,000 salary adjustment was to the purchase of an ownership interest in DSC. None of the other doctors ever advised him that is what he should

expect to receive when he departed from the corporation nor did he ever inquire whether that is what he should expect would occur. All Plaintiff was advised he would receive was his collected account receivables, a payment Plaintiff admits he received from the corporation in October, 2002. Plaintiff has not sufficiently established that there is anything left that Defendants are legally obligated to provide him.

Since all of Plaintiff's claims flow from the allegation that he remained a shareholder of the corporation, and he has failed to present sufficient evidence that he continued to be one, he will be unable to convince a reasonable jury that he can establish any and all of his claims.

### 2. Plaintiff Cannot Legally Be A Current Shareholder Of DSC

Even assuming that Plaintiff remained to be shareholder upon his termination of his employment, by law, he can no longer be one. Under the Illinois Medical Corporation Act ("MCA"), 805 ILCS 15, *et seq.*, only Illinois licensed physicians may be officers, directors or shareholders of an Illinois medical corporation. 805 ILCS 15/13; *In re Christy*, 306 B.R. 611 (C.D. Ill. 2004). Plaintiff has not disputed that his Illinois medical license expired on July 31, 2005. He testified that he is no longer actively licensed to practice medicine in the State of Illinois and admitted that one would be required to have an Illinois medical license in order to be a shareholder of a medical corporation. Consequently, he cannot legally be a shareholder of the DSC, a medical corporation, as of July 31, 2005 and would not be entitled to relief for any acts or damages that he allegedly incurred after July 31, 2005 as an alleged shareholder of the corporation in connection with any four of his causes of action.

In addition, the corporation's by-laws show that upon being disqualified from the corporation, the Plaintiff would only be entitled at most to net book value of the corporation. Therefore to the extent that Plaintiff remained a shareholder of the corporation after his departure from the corporation, Plaintiff cannot now legally be a shareholder of DSC as the date his Illinois

license expired in July, 2005, and he would be limited to recovering only the net book value of his shares. As supported by the record and testified to by DSC's accountant and reflected on its tax returns, the net book value of the corporation's shares has always been a negative number. Even with that said, it remains undisputed that upon his departure, Plaintiff received a check for over $16,000 from DSC as payment from his account receivables.

    B.    **Plaintiff Has Not Alleged Sufficient Evidence To Support His Oppression Claim**

Plaintiff has the stringent burden to prove that he was oppressed by Defendants Dr. Altimari and Dr. Jorgensen. The BCA states that a shareholder in a non-public corporation may obtain remedy as provided by the Act if the "directors or those in control of the corporation have acted, are acting, or will act in a manner that is illegal, oppressive, or fraudulent with respect to the petitioning shareholder whether in his or her capacity as a shareholder, director or officer." 805 ILCS 5/12.56(a)(3). Due to the extreme nature of the remedies available to the plaintiff, Illinois courts have found oppression in situations clearly involving conduct that is overpowering, tyrannical and domineering. Only acts that are "arbitrary, overbearing and heavy-handed" will result in a finding of oppression. *Compton v. Paul K. Harding Realty Co.*, 6 Ill.App.3d 488, 499, 285 N.E.2d 574 (5th Dist. 1972). Further, no single act which, by itself, will be deemed oppressive without consideration of the surrounding circumstances. *Schirmer v. Bear*, 271 Ill.App.3d 778, 784, 648 N.E.2d 1131 (2nd Dist. 1995).

First, Plaintiff has failed to establish that that Drs. Altimari and Jorgensen, as "directors or those in control of the corporation" oppressed Plaintiff as a shareholder. 805 ILCS 5/12.56(a)(3). Plaintiff has not put forth any evidence to substantiate that Drs. Altimari and Jorgensen engaged in wrongful conduct and acted out of their own self-interest as directors of the corporation. Plaintiff has also not set forth any evidence to support that Drs. Altimari and

7

Jorgensen were persons in "control of the corporation," as provided in the oppression statute, particularly where it is undisputed that all of the shareholders of the corporation shared an equal shareholder interest in the corporation. Drs. Altimari and Jorgensen were not majority shareholders in the corporation at the time Plaintiff was practicing at DSC nor subsequent to his resignation.

In addition, Plaintiff has simply failed to present any evidence that Drs. Altimari and Jorgensen acted in a fashion that a reasonably jury would consider to be "arbitrary, overbearing and heavy-handed." Plaintiff failed to present any evidence that they engaged in self-dealing or fraud, wasted corporate assets, or acted out of their self-interest as directors of the corporation. Moreover, Plaintiff's request for assistance with tail insurance and access to the corporation's records were responded to in a timely and reasonable manner and Plaintiff failed to show that the corporation had any obligation to pay for his tail insurance, as the insurance was always a doctor-specific expense at DSC. Plaintiff further admitted that while he was a member of the practice, he did not recall having any complaints about the way the practice was administered or managed or that Drs. Altimari and Jorgensen failed to maintain corporate records or issue him any share certificates to his detriment. These undisputed actions of Drs. Altimari and Jorgensen are a far cry from oppressive conduct. Here, the actions Plaintiff alleges as constituting oppression are instead the products of business judgment, and were not motivated by a desire to profit at the corporation's expense or to disadvantage Plaintiff. *Romanik v. Lurie Home Supply Center, Inc.*, 105 Ill.App.3d 1118, 1134, 435 N.E.2d 712 (5th Dist. 1982).

Consideration of the circumstances upon which Plaintiff came into the practice and departed the practice support that Plaintiff was not oppressed by Drs. Altimari and Jorgensen. As stated above, Plaintiff testified that although he did not sign a shareholder agreement, he

merely "assumed" he would receive monies upon his voluntary termination. Such an assumption is clearly unreasonable, especially in light of the fact that he admits that no one informed him of such an arrangement when he joined as a shareholder. Plaintiff voluntarily chose to abandon the practice, move to Michigan and cease attending shareholder meetings. Plaintiff even admitted that prior to leaving the practice, he did not attend one of the shareholder meetings scheduled in May, 2002 as such a meeting was for "existing shareholders," and that he voluntarily elected not to renew his Illinois medical license. Plaintiff has not shown any evidence to support that Dr. Altimari or Dr. Jorgensen shut him out of the corporation. Rather, it is through Plaintiff's conduct that he abandoned his shareholder interest in the corporation. Therefore, Plaintiff's oppression claim fails.

### C. Plaintiff Has Presented Insufficient Evidence To Show That Defendants Altimari And Jorgensen Breached Their Alleged Fiduciary Duties To Him

To prevail on a claim for breach of fiduciary duty, Plaintiff must establish that: 1) a fiduciary relationship existed; 2) Defendants owed him a fiduciary duty; 3) the duty was breached; and 4) the breach caused Plaintiff injury. *Chicago City Bank and Trust Co. v. Lesman*, 186 Ill.App.3d 697, 542 N.E.2d 824 (1st Dist. 1989). The duties of a fiduciary are those of loyalty, good faith and honesty. *Artra Group v. Salmon Bros. Holding Co.*, 288 Ill. App.2d 467, 470, 680 N.E.2d 760 (2nd Dist. 1997).

Plaintiff has failed to present sufficient evidence that Drs. Jorgensen and Altimari breached their fiduciary duties to Plaintiff. Plaintiff has no evidence that the two doctors were dishonest, did not deal openly with issues facing the corporation, did not deal in good faith, or did not act in the best interests of the corporation. He did not present sufficient evidence to show that Drs. Jorgensen or Altimari mismanaged the corporation, that the corporation's financial results were deficient or that they acted out of their own self-interests. Any allegation that the

doctors failed to issue him share certificates hardly amounts to a breach of fiduciary duties where Plaintiff never requested any such certificates and such certificates did not give value to the shares he believes he owns. Plaintiff has also failed to present any evidence that any alleged breaches caused Plaintiff any injury.

Drs. Jorgensen and Altimari are, moreover, entitled to the protections of the business judgment rule. The business judgment rule is a presumption that shareholders, officers and directors of a corporation make decisions on an informed basis, in good faith and with the best interests of the corporation in mind. *Ferris Elevator Co., Inc. v. Neffco, Inc.*, 285 Ill.App.3d 350, 354, 674 N.E.2d 449 (3rd Dist. 1996). If the shareholders, directors and/or officers were merely acting within the scope of their duties and exercising their business decision, they cannot be held liable for their decisions. *Romanik v. Lurie Home Supply Center, Inc.*, 105 Ill.App.3d 1118, 1134, 435 N.E.2d 712 (5th Dist. 1982).

It is Plaintiff's burden to show the presumption of the business judgment rule does not apply by presenting evidence that Drs. Jorgensen and Dr. Altimari acted fraudulently, illegally, or without becoming sufficiently informed to make an independent business decision. *Ferris Elevator*, 285 Ill.App.3d at 354. The presumption applies here, particularly where Plaintiff agreed to voluntarily dismiss his allegations of self-dealing against Drs. Jorgensen and Dr. Altimari. (See Letter from Plaintiff's counsel relating to the dismissal of certain complaint allegations, attached hereto as Exhibit "A".) Plaintiff has failed to show that his unsubstantiated allegations amount to anything more than what could have at most been poor business judgment. Without more, an exercise of poor business judgment, if any by these Defendants, does not constitute a breach of a fiduciary duty. *Artra Group*, 288 Ill. App.2d at 471.

D.  **Plaintiff Has Failed To Produce Sufficient Evidence To Prove That Defendants Violated Section 7.75 Of The Illinois Business Corporation Act**

In his complaint, Plaintiff alleges that Defendants violated Section 7.75 of the IL Business Corporation Act ("BCA") by refusing his requests to examine DSC's books and records after he left the corporation. 805 ILCS 5/7.75. Section 7.75(b) provides, in pertinent part:

> Any person who is a shareholder of record shall have the right to examine, in parson or by agent, at any reasonable time or times, the corporation's books and records of account, minutes, voting trust agreements filed with the corporation and record of shareholders, and to make extracts therefrom, but only for a proper purpose.

A Section 7.75 claim has two components that the plaintiff must prove: 1) he must be a "shareholder" and 2) he must have a "proper purpose" for his request. *Hess v. Reg-Ellen Machine Tool Corp.*, 423 F.3d 653, 665 (7th Cir. 2005). The right to examine the books and records, however, only belongs to "shareholders." *Id*. As explained above, Plaintiffs simply was no longer a "shareholder" of the corporation after he left the corporation and at the time he made his requests. Therefore, Section 7.75 does not apply to him, he was not entitled to examine the corporation's books, and Defendants could not be liable for allegedly violating the statute.

Assuming arguendo that Plaintiff was a shareholder, Plaintiff fails to meet his burden that he had a "proper purpose" for his requests. *Hess*, 423 F.3d at 666 (stating that the plaintiff "bears the burden of demonstrating that his request was made for a 'proper purpose.'"). According to Illinois law, a "proper purpose" is shown when a shareholder has "an honest motive, is acting in good faith, and seeks to protect the interests of the corporation." *Taghert v. Wesley*, 343 Ill.App.3d 1140, 1146, 799 N.E.2d 377 (1st Dist. 2003). A "mere statement alleging a facially proper purpose is not enough." *Hess*, 423 F.3d at 666. The purpose must be "lawful in character and not contrary to the interests of the corporation." *Taghert*, 343 Ill.App.3d at 1146. Here,

Plaintiff had his own selfish motives in requesting inspection of the corporate records. He did not establish any evidence that he sought records in good-faith for the purpose of protecting the interest of the corporation but rather to explore his explore his self-interest in determining the value of what he alleges to be his shareholder interest in DSC.

Notwithstanding DSC's position that Plaintiff was no longer a shareholder in the corporation after he voluntarily left the practice, Defendants allowed him, through his counsel, to inspect the corporation's records. Plaintiff testified that his counsel had the opportunity to inspect the corporation's books and records and he did not present any testimony to the effect that the corporation's response was untimely or unreasonable or that he was not permitted to inspect any of the records he sought. Plaintiff further failed to present any evidence that he accrued any harm in any purported delay in awaiting Defendants' response to his requests.

### E. Plaintiff Has Failed To Produce Sufficient Evidence To Establish That Defendants Conspired Against Him

In Illinois, civil conspiracy consists of: 1) an agreement between two or more persons; 2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means; and 3) some tortious or illegal act by a party to the agreement in furtherance of the agreement. *Adcock v. Brakegate, Ltd.*, 164 Ill.2d 54, 62-63, 645 N.E.2d 888 (1994). Plaintiff has failed to establish any of these required elements. Plaintiff did not put forth to any sufficient evidence to support that there was an agreement between any of the Defendants to allegedly take away shares that Plaintiff believes he owns for an unlawful purpose and/or that they engaged in some tortious or illegal acts in furtherance of such an agreement. As stated above, when Plaintiff became a shareholder, he never had an agreement with any of the Defendants that he would be paid some sort of value for his alleged shares when he left the

corporation. Nevertheless, the corporation still paid Plaintiff his account receivables in October 2002, subsequent to his departure.

In addition, as acknowledged by this Court in a prior order, it is well-settled under Illinois law that a "civil conspiracy cannot exist between a corporation's own officers or employees." *Van Winkle v. Owens-Corning Fiberglas Corp.*, 291 Ill.App.3d 165, 683 N.E.2d 985, 991 (4th Dist. 1997); *see also Small*, 713 N.E.2d at 1222 ("A corporation is incapable of conspiring with itself."); *Bilut v. Northwestern Univ.*, 296 Ill.App.3d 42, 692 N.E.2d 1327, 1332 (1st Dist. 1998). Accordingly, Defendants could not have legally conspired with one another in order to allegedly refuse to compensate Plaintiff for his purported shareholder interest. Plaintiff dropped his allegations of self-dealing against Defendants and did not present any evidence that the purported acts or omissions they committed were outside of their official capacities – as shareholders, officers and/or directors of the corporation. Moreover, the mere fact that conduct may be wrongful does not take it beyond the scope of the Defendants' duties. *See EEOC v. Outsourcing Solutions, Inc.*, 2002 WL 31409584 *18 (N.D. Ill. 2002). Defendants could, therefore, not have conspired with one another against Plaintiff. Even construing all reasonable inferences in Plaintiff's favor, given Plaintiff's lack of supporting evidence, a reasonable jury would not find that Defendants conspired against Plaintiff.

**F. Plaintiff Has Failed To Sufficiently Prove That Drs. Altimari And Jorgensen Should Be Individually Liable**

Plaintiff has failed to sufficiently establish that Defendants Drs. Altimari and Jorgensen should be individually liable for any alleged wrongful actions they may have committed. First, Plaintiff has failed to present sufficient evidence of any wrongful conduct by Drs. Altimari and Jorgensen. Second, Plaintiff has failed to show that the Drs. Altimari and Jorgensen committed any alleged wrongful conduct as individuals outside of their official capacities. Plaintiff did not

present any evidence to support his allegation that Drs. Altimari or Jorgensen took any individual action against Plaintiff to "take away his shares."

As stated above, Drs. Altimari and Jorgensen are protected from individual liability by way of the Illinois business judgment rule. The business judgment rule serves to protect the decisions of directors and officers of a corporation and the burden of proof is on the party challenging a corporate decision made by a director to present facts that rebut the presumption created by the business judgment rule. *See In re H. King & Assoc.*, 295 B.R. 246, 275 (Bankr. N.D. Ill. 2003) (*citing Ferris Elevator Co., Inc. v. Neffco, Inc.*, 674 N.E.2d 449, 552 (Ill.App.Ct. 1996).) The rule "applies to protect directors who have performed diligently and carefully and have not acted fraudulently, illegally, or otherwise in bad faith." *Treco, Inc. v. Land of Lincoln Sav. and Loan*, 749 F.2d 374, 377 (7th Cir. 1984). Under this rule, "corporate directors, acting without corrupt motive and in good faith, will not be held liable for honest errors or mistakes of judgment, and a complaining shareholder's judgment shall not be substituted for that of the directors." *Id.* (*quoting Lower v. Lanark Mut. Fire Ins. Co.*, 448 N.E.2d 940, 944 (Ill.App.Ct. 1983)). Here, Plaintiff has failed to present sufficient facts to rebut the presumption. Plaintiff failed to present sufficient evidence that Drs. Jorgensen and Altimari were engaged in any self-dealing or individually acted in bad-faith to commit wrongdoing against him. The Court should, therefore, hold as a matter of law, that Defendants Altimari and Jorgensen are shielded from individual liability.

### G. Plaintiff Has Failed To Present Sufficient Evidence To Support His Claim For Punitive Damages

Plaintiff's claim of punitive damages is clearly unwarranted and unsupported by the record. Punitive damages may be recovered when the wrongful act complained of is characterized by fraud, malice, oppression, willfulness, or wantonness. *Kelsay v. Motorola, Inc.*,

74 Ill.2d 172, 186, 384 N.E.2d 353 (1978). Punitive damages are intended to punish the wrongdoer and to deter that party, and others, from participating in similar acts. *Deal v. Byford*, 127 Ill.2d 192, 203, 130 Ill.Dec. 200, 537 N.E.2d 267, 272 (2001). Here, punitive damages are unsupported by substantial evidence as a whole and it would be wholly inequitable to punish Defendants. Plaintiff has not shown sufficient evidence to support that Defendants engaged in willful or malicious conduct against Plaintiff. Therefore, Plaintiff's claim for punitive damages should be denied, and this Court should enter judgment as a matter of law in Defendants' favor in this regard.

V.     **CONCLUSION**

WHEREFORE, Defendants DuPage Surgical Consultants, Ltd., Richard A. Jorgensen, M.D., and Anthony Altimari, M.D. respectfully request that this Court grant their Motion For Judgment As A Matter Of Law After The Close Of All Evidence in Defendants' favor, and against Plaintiff Andrew Georgeson, and for any other relief this Court deems just and appropriate.

Dated: this 15th day of May, 2007.

Respectfully Submitted,

DUPAGE SURGICAL CONSULTANTS, LTD.,
RICHARD A. JORGENSEN, M.D and
ANTHONY ALTIMARI, M.D.

By:     /s/James K. Borcia
        One of Their Attorneys

Daniel R. Formeller
James K. Borcia
Katherine L. Haennicke
Charmagne T. Romasanta
TRESSLER, SODERSTROM, MALONEY & PRIESS, LLP
233 South Wacker Drive, 22nd Floor
Chicago, IL 60606
(312) 627-4000

# BELL, BOYD & LLOYD LLC

Three First National Plaza
70 West Madison Street
Suite 3100
Chicago, IL 60602-4207

312-372-1121
312-827-8000 FAX

Visit our web site at
www.bellboyd.com

## FAX COVER SHEET

4801-2

#219

| | | | | |
|---|---|---|---|---|
| Date | October 20, 2006 | | | |
| Total Number of Pages | 2 (Including this page) | | | |

| | Company | City | Fax Number | Phone Number |
|---|---|---|---|---|
| To<br>Daniel Formeller | Tressler, Soderstrom, Maloney & Priess | Chicago | 312-627-1717 | 312-627-4000 |

| | |
|---|---|
| From | John P. Morrison |
| Phone | 312-807-4258 |
| Direct Fax | 312-827-8134 |
| Client/Matter Number | 115369-002 |
| Message | Ltr dated 10/20/2006 re: potential summary judgment motion |

EXHIBIT A

If this transmission is incomplete, please call 312-558-6284.

This document is intended only for the addressee(s) named above and may contain information that is privileged, confidential, and exempt from disclosure under applicable law. Any use, dissemination or copying of this communication other than by the addressee is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original facsimile to us by mail. Thank you.

# BELL, BOYD & LLOYD LLC

70 West Madison Street, Suite 3100 • Chicago, Illinois 60602-4207
312.372.1121 • Fax 312.827.8000

JOHN P. MORRISON
312.807.4258
jmorrison@bellboyd.com
Direct Fax: 312.827.8134

**By Facsimile and U.S. Mail**

October 20, 2006

Daniel Formeller
Tressler, Soderstrom, Maloney & Priess
233 South Wacker Drive, 22nd Floor
Chicago, IL 60606

Re:    Andrew Georgeson v. DuPage Surgical Consultants Ltd., *et al.*
       Case No. 05 C 1653

Dear Dan:

Thank you for your correspondence of October 17, 2006 clarifying your letter of October 4, 2006 regarding your potential summary judgment motion. Let me address your assertions as I understand them in the order you raised them.

With respect to your assertion that Dr. Georgeson lacks standing to bring his claims, we disagree that he lacks standing to pursue all of the allegations you cite. We agree, however, that we will not pursue paragraphs ix, x, xi of paragraph 44. The injuries to Dr. Georgeson caused by your clients' misconduct as alleged throughout the remainder of paragraph 44 are matters in which Dr. Georgeson suffered individual personal injuries, distinct from the injuries suffered by the corporation itself. Therefore, Dr. Georgeson has standing to assert such claims under Illinois law.

With respect to your assertion that Dr. Georgeson cannot fit within the recognized exceptions to the intra-corporate conspiracy doctrine, we disagree. Your clients' actions in eliminating Dr. Georgeson as a shareholder were virtually, by definition, acts demonstrating the self-interest of the individual defendants.

With respect to your assertions that Dr. Georgeson cannot prevail on his claims of breach of fiduciary duty because he was "aware of negotiations, discussions and positions of each shareholder regarding the interest in the corporation and the ramifications of terminating one's relationship with DuPage Surgical," we disagree. Whether Dr. Georgeson was aware that your clients were seeking to change the manner of DSC's governance and certain other procedures or contracts in the future has no bearing on whether they oppressed him or breached duties owed to him at the time.

Daniel Formeller
October 20, 2006
Page 2

Ultimately, your assertion that my client has no viable claim of oppression ignores one overwhelming fact: your clients completely removed Dr. Georgeson from every benefit of shareholder status and took away his shares. What more oppressive conduct could there be?

Thank you.

Very truly yours,

John P. Morrison

JPM:pxk

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANDREW GEORGESON, D.O., )
)
         Plaintiff, )
) No. 05 C 1653
v. )
) Honorable Judge Samuel P. King
DUPAGE SURGICAL CONSULTANTS, LTD., )
RICHARD A. JORGENSEN, M.D., and )
ANTHONY ALTIMARI, M.D., )
)
         Defendants. )

## CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2007, I electronically filed **Defendants' Motion For Judgment As A Matter Of Law After The Close Of All Evidence** with the Clerk of Court using the CM/ECF system which will send notification of such filings(s) to the following:

        John P. Morrison
        Jeffrey T. Petersen
        BELL, BOYD & LLOYD LLC
        Three First National Plaza
        70 West Madison Street, Suite 3100
        Chicago, IL 60602

        DUPAGE SURGICAL CONSULTANTS, LTD.,
        RICHARD A. JORGENSEN, M.D and
        ANTHONY ALTIMARI, M.D.

        By: /s/ James K. Borcia
             One of Their Attorneys

Daniel R. Formeller
James K. Borcia
Katherine L. Haennicke
Charmagne Topacio
TRESSLER, SODERSTROM, MALONEY & PRIESS, LLP
233 South Wacker Drive, 22nd Floor
Chicago, IL 60606
(312) 627-4000